Ronald Arquette **STEINBERG**

v.

Lieutenant Russell **TAYLOR, individually and in his official capacity et al.**

**Civ. No. B-79-37.**

United States District Court, D. Connecticut.

Sept. 25, 1980.

Dennis E. Curtis, New Haven, Conn., for plaintiff.

Cheryl Wattley, Asst. U. S. Atty., New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION

ELLEN B. BURNS, District Judge.

Plaintiff Ronald Arquette Steinberg, an inmate at the Federal Correctional Institution, Danbury, brings this action seeking a writ of habeas corpus, declaratory and injunctive relief, and monetary relief predicated on the alleged acts of defendants who are all members of the staff of F.C.I., Danbury. Claiming jurisdiction under 28 U.S.C. § 1651, 28 U.S.C. § 1331(a), and 28 U.S.C § 1361, plaintiff alleges that defendants violated his constitutional and statutory rights by seizing his legal documents.

A trial was held and briefs submitted. Based upon the credible evidence and the legal arguments of counsel, this Court makes the following findings of fact and conclusions of law.

On January 3, 1979, plaintiff was assigned to A unit at F.C.I., Danbury. On that afternoon, plaintiff was working in the education department and returned to his unit about 3:45 p. m. When he arrived at the unit, he found his locker disturbed and learned that in his absence there had been a "shakedown" of the unit, i. e., a surprise search for contraband.

The shakedown which plaintiff detected was authorized by Lt. Taylor and began about 2:15 p. m. when Officers Harrell and Quinones came into the unit and started

randomly to unlock lockers and go through them. Later these officers were joined by Officer Crump. When Officer Quinones reached plaintiff's locker, which had been opened by Officer Crump, he searched it and removed three accordian–type file folders which he put on plaintiff's bed while he closed the locker and then took the files "up front" and placed them in a laundry cart. Officer Quinones then returned to searching other lockers. Two of the file folders were empty at the time they were taken up front, but the folder in which plaintiff's legal papers were kept still had approximately 200 pages of notes and legal documents in it at the time it was confiscated.

When plaintiff came back into the unit and realized by checking his inventory list that his legal papers were gone, he went at once to Counselor Farrell, and night officer Morrow, both of Unit A, and inquired about the search. Mr. Farrell suggested that plaintiff bring his problem to Lt. Taylor, which plaintiff tried to do but was told that Lt. Taylor had left his office for the day.

Next plaintiff returned to the unit, stood the 4:30 p. m. count, and then went to the mess hall looking for Lt. Taylor. Upon learning that the lieutenant was not in the mess hall, plaintiff went to George Smith, the unit manager, and Ron Seri. Upon hearing plaintiff's complaint, Mr. Smith called the lieutenant then on duty in A unit who knew nothing of the confiscated materials.

Eventually, the confiscated material in the laundry cart, characterized as "mostly junk", was disposed of in the normal manner at the order of Lt. Taylor, and it appeared from the evidence that plaintiff's legal papers were destroyed. The evidence showed that plaintiff lost his only copies of papers relating to his divorce and his rule 35 motion, both of which actions required papers to be filed within a limited time after the date the papers were seized. In addition, the folder contained papers relating to actions brought by other inmates with plaintiff's help. Copies of these papers were in the possession of the inmates for whom the work was done. Plaintiff

was able to get an extension of time within which to file the rule 35 papers. He failed to obtain an extension in his domestic matter; the papers which were taken contained all the references in plaintiff's possession to the name and phone number of the opposing attorney.

Plaintiff filed a request for administrative remedy (BP–9) and at the time of trial the second stage of that procedure (BP–10) was awaiting administration response.

Plaintiff complains first that the shakedown procedures violated his constitutional rights. The evidence showed that plaintiff was not given a receipt for the items which were taken, even though the folder which contained legal papers was labelled "legal papers." Taylor testified that receipts are not given for any property taking during a shakedown unless the person doing the shakedown believes that the property is allowed personal property and takes it nevertheless. The person conducting the shakedown has some discretion to decide what is contraband, and if he is uncertain, he takes it to a supervisor, such as Lt. Taylor, for a determination. If it is not contraband, the item is returned. Nevertheless, if a disagreement develops between an inmate and a person conducting a shakedown over whether or not an item of property is contraband, Lt. Taylor testified that a receipt would not be given to the inmate before the item was taken.

The Second Circuit in *Wolfish v. Levi*, 573 F.2d 118, 131–32 n. 29 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), affirmed Judge Frankel's opinion in *United States ex rel. Wolfish v. Levi*, 428 F.Supp. 333, 342, *supplemented in* 439 F.Supp. 114, 151 (S.D.N.Y.1977) that shakedown procedures very like those adduced at trial denied the inmates due process, and that receipts must be given for seized property, and certain minimal procedures must be provided to enable an inmate to challenge a seizure.

This Court therefore holds that plaintiff's constitutional rights were violated in the shakedown and joins Judge

**480**

Frankel and the Second Circuit in requiring that receipts be given for all seized property, obvious contraband or not, and that the following procedural safeguards be provided when seizures of property are made by prison authorities:

(a) A brief statement to the inmate of the asserted justification for the seizure.

(b) A notice of the right to respond in some reasonably simple and convenient fashion and assert grounds, if any, why the seizure is claimed to have been unwarranted.

(c) Some suitable opportunity to meet and answer controverted evidence thought to warrant confiscation.

(d) A decision, with reasons, however brief.

■ Additionally, plaintiff claims violations of his constitutional right of access to the courts. The Court notes the continuing line of cases which clarifies the rights of inmates *vis à vis* facilitated access to the courts, *see, e. g., Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) requiring prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing adequate law libraries or adequate assistance from persons trained in the law; *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), holding that prisoners may not be prohibited from assisting each other with legal matters. "[T]he Constitution protects with special solicitude, a prisoner's access to the Courts." *Sostre v. McGinnis*, 442 F.2d 178, 189 (2d Cir. 1971). In the spirit of these cases, the Court finds that the destruction of plaintiff's papers, resulting, as it did, in an impediment to his conduct of on–going court cases, infringed his constitutional right of access to the courts.

■ The evidence showed that plaintiff spent approximately 120 hours preparing destroyed papers in connection with his Rule 35 motion and divorce action. In compensation for plaintiff's lost work, for the annoyance and anxiety caused by the loss of the papers, and for the violation of his rights to due process and free access to the courts, respondents are ordered to pay to plaintiff the sum of $475.00.

■ The injunctive relief requested is denied, because the Court has no reason to believe the prison officials will violate the procedures mandated by the Court to be followed in instances where documents of prisoners are seized or that retaliation will be effected as a result of Mr. Steinberg's exercise of his right of access to the Court.

So ordered.